UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN NELOMS,                                             :

                Petitioner,             :          05 Civ. 8162 (GWG)

    -v.-                                                  :

                                              OPINION AND ORDER
WILLIAM BROWN, Superintendent,                          :
Eastern NY Correctional Facility,
                                                        :
                Respondent.
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

John Neloms, currently an inmate at Fishkill Correctional Facility in Beacon, New York, brings this petition pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In October 2000, a jury in New York County convicted Neloms of multiple charges, including two counts of weapons' possession. In December 2000, he was sentenced to a prison term of 15 years.

The parties have consented to disposition of this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the petition is denied.

I. BACKGROUND

    A. Evidence at Trial

On December 8, 1999, at about 8:20 p.m., Randy Pena and Julio Delarosa were smoking marijuana on the corner of West 153rd Street and Amsterdam Avenue with friends when they heard a man known as "Santiago" yell from a nearby third-story window that he had been "robbed" and that the robbers were "going down." (Delarosa: Tr. 126-27; Pena: Tr. II 3-5).[1]

_____

[1] "Tr." refers to the proceedings held October 25, 26, and 30, 2000. "Tr. II" refers to the October 26, 2000 testimony of Randy Pena, which is separately paginated. "H." refers to the proceedings held on October 19, 23, and 24, 2000.

Moments later, Neloms and Craig Guess exited the building, each brandishing a gun in the direction of Pena, Delarosa and their friends, and gesturing with the gun for them to "get back." (Delarosa: Tr. 128-30; Pena: Tr. II 5).  One of the men was also carrying duct tape.  (Delarosa: Tr. 129).

As Neloms and Guess walked away from the building, north up Amsterdam Avenue (see Virgil: Tr. 35), Delarosa and Pena got the attention of a police van driving through the area, yelling: "They got guns.  They got guns."  (Delarosa: Tr. 134; Pena: Tr. II 9).  At this point, Neloms and Guess were "about 35 [to] 40 feet" away from the police and "nobody else [was] on the block."  (Virgil: Tr. 34).  A chase ensued.  See Politowski: Tr. 167-68.  Neloms and Guess began to "jog[]" uptown with "their hands in front of them," (Virgil: Tr. 35), turning east onto 154th Street.  (Virgil: Tr. 36).  The police officers followed in their van (see Politowski: Tr. 167-168), keeping the two men in their sight except for a "brief second [when] they turn[ed] the corner."  (Virgil: Tr. 37).  Delarosa and Pena followed the chase on foot.  (Delarosa: Tr. 135; Pena: Tr. II 10-13).

When the police van reached the corner of 154th Street, Officers Virgil and Politowski exited the van to pursue Neloms and Guess on foot, while a third officer continued to follow their progress from the van.  (Politowski: Tr. 168-69; Virgil: Tr. 38).  First Guess and then Neloms discarded objects that the officers later identified as guns.  As Sergeant Politowski described it, "[a] couple of car lengths into the block," Guess "ben[t] down at the knees" to "nonchalant[ly]" place an "object to the ground" (Politowski: Tr. 168); and, a few moments later, Neloms "threw" an object "with a sweeping motion, . . . underneath [a] car."  (Politowski: Tr. 170).  Once it was established that the object Guess had dropped was a loaded .25 caliber gun

2

(see Virgil: Tr. 39), the officers converged, first on Neloms, then on Guess, with guns drawn.
(Virgil: Tr. 30-32; Politowski: Tr. 171-72).  The "whole incident, . . . from the time [the officers]
start[ed] to the time [they] recover[ed] the guns, [lasted] . . . a minute or so."  (Politowski: Tr.
181).

 At the time of his arrest, Neloms had duct tape in his hand and was carrying a bag.
(Virgil: Tr. 30, 44).  The police removed a box cutter from his "coat pocket," and also recovered
a "calculator with cocaine residue," as well as "a digital scale with cocaine residue." (Virgil: Tr.
31).  Id.  Neloms had "a large sum of money," in his pants pocket.  (Virgil: Tr. 50).  Officer
Virgil also recovered "white powder," which tested positive for cocaine, from Neloms's pocket.
(Virgil: Tr. 31).  Nearby, Sergeant Politowski retrieved a loaded .40 caliber semiautomatic gun
(see Virgil: Tr. 50-51; Politowski: Tr. 175) from underneath the car where he had witnessed
Neloms drop the object that had sounded metallic as it hit the ground.  (Politowski: Tr. 172-73,
175-76).  Officer Virgil located a stun gun from the scene (Virgil: Tr. 32; Politowski: Tr. 173),
as well the .25 caliber gun initially retrieved on the ground.

 Following the arrests, which occurred approximately "five . . . [to] six minutes" after
Neloms had exited the building, the civilian witnesses returned to the corner of 153rd Street and
Amsterdam.  (Pena: Tr. II 13-14).  There, they both saw the man who stated that he had been
robbed.  (Delarosa: Tr. 141; Pena: Tr. II 13-14).  The witnesses testified that the victim had a lot
of "gray tape on his hand [and] around his neck."  (Delarosa: Tr. 142; see also Pena: Tr. II 14).
While the victim said "nothing," he looked "scared," called a car, and "went home."  (Delarosa:
Tr. 142; Pena Tr. II 14).  The officers did not speak to the victim.  Before returning to the
precinct, they conducted a canvas of the building (Virgil: Tr. 32, 104) and spoke to Delarosa and

Pena.  (Virgil: Tr. 100).

  B.  Proceedings in State Court

  On October 30, 2000, the jury convicted Neloms of Criminal Possession of a Weapon in the Second Degree under New York Penal Law § 265.03(2);[2] Criminal Possession of a Weapon in the Third Degree under New York Penal Law § 220.02(4); Criminal Possession of a Controlled Substance in the Seventh Degree under New York Penal Law § 220.03; and Criminally Using Drug Paraphernalia in the Second Degree under New York Penal Law § 220.50(3).  See Petition for Writ of Habeas Corpus By a Person in State Custody, dated Sept. 1, 2005 (Docket #1) ("Petition"), at 1;[3] Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, filed May 10, 2006 (Docket #7) ("Resp. Mem."), at 1.  On December 14, 2000, Neloms was sentenced to concurrent terms on the charges as follows: 15 years for the second-degree weapon charge; 7 years on the third-degree weapon possession charge and one year each for the drug possession and paraphernalia charges.  Id.

---

 [2] Neloms was convicted under subsection (2) of New York Penal Law § 265.03, which at that time provided:

  A person is guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another:

  (1) He possesses a machine-gun; or

  (2) He possesses a loaded firearm; or

  (3) He possesses a disguised gun.

The statute was later amended such that the current subsection (2) no longer refers to a "loaded firearm."  References to the Penal Law statute herein are exclusively to the versions in effect at the time of Neloms's crime and trial.

 [3] Page numbers were added by the Court to the petition.

Neloms, through counsel, appealed his conviction to the Appellate Division, First Department. See Brief for Defendant-Appellant (reproduced as Ex. A of Declaration in Opposition to Petition for a Writ of Habeas Corpus, filed May 10, 2006 (Docket #8) ("Resp. Decl.")). Neloms's counsel argued in her submission that: (1) the trial court erroneously admitted Santiago's statements that he had been robbed and "they're coming down" under the excited utterance and present sense exceptions to the hearsay rule, id. at 17-26; (2) the court erred in admitting evidence of Neloms's possession of a gun, stun gun and duct tape, id. at 26-32; and (3) Neloms's sentence was excessive. Id. at 32-34. Neloms also filed a pro se supplemental brief with the Appellate Division in which he advanced three additional claims: (1) the evidence that Neloms intended to use the gun unlawfully against another was legally insufficient, see Ex. B of Resp. Decl. at 1-7; (2) the suppression court should have suppressed "the weapon and all other items recovered from the ground" as the fruit of an unlawful search and seizure, see id. at 7-12; and (3) Neloms's due process rights were violated by admission of hearsay evidence before the grand jury. See id. at 13-17.

On June 17, 2004, the Appellate Division, First Department, affirmed Neloms's conviction. See People v. Neloms, 8 A.D.3d 136 (1st Dep't 2004). With regard to the trial court's admission of out-of-court statements made by a non-testifying witness, the Appellate Division held that the trial court

> properly admitted, as both an excited utterance and a present sense impression, a declaration made to two civilian witnesses by the nontestifying victim of an uncharged robbery, in which the screaming declarant, with duct tape on his hands and neck, stated that he had just been robbed and that the robbers were on their way out of the building. The evidence warranted the conclusion that the robbery had just occurred, and that the declarant was still under the influence of the stress of that incident.

Id. at 137.  Moreover, the Appellate Division found that the hearsay testimony "was received not

for its truth but to show the police officers' state of mind," id., and that "the court's limiting

instructions minimized any prejudicial effect" of this testimony and "various other evidence

relating to the uncharged robbery."  Id.  As to the excessiveness of Neloms's sentence, the court

found "no basis" for this claim.  Id.  Finally, the court noted that it had "considered and rejected

defendant's remaining claims, including those contained in his pro se supplemental brief."  Id.

On July 7, 2004, Neloms, through counsel, applied for leave to appeal to the New York

Court of Appeals.  See Letter to Hon. Judith S. Kaye, from Lisa F. Lewis, dated July 7, 2004

(reproduced as Ex. E of Resp. Decl.).  The letter discussed the same three grounds for review as

were raised in his appellate counsel's brief to the Appellate Division.  See id.  Additionally, the

letter "ask[ed] [the] Court to consider and review all issues raised in the enclosed Brief for

Defendant-Appellant and argued orally."  Id.[4]  On September 23, 2004, the Court of Appeals

denied Neloms's leave application.  People v. Neloms, 3 N.Y.3d 710 (2004).

C.  The Present Petition

Neloms's petition is dated September 1, 2005; was received by the Pro Se Office on

September 7, 2005; and was docketed on September 21, 2005.  The Petition seeks a writ of

habeas corpus based on the following grounds:

> (1) "The People's evidence adduced at trial did not prove all the elements of the
> crime charge [sic] beyond a reasonable doubt.  The evidence was legally
> insufficient to prove that appellant possed [sic] a weapon with the intent to use [it]
> against another."  Petition at 5-6.

---

[4] Respondent does not contend the leave letter was insufficient to exhaust the issues
raised in Neloms's pro se brief and thus we treat all issues raised in the Appellate Division as
exhausted.

(2) "The trial court erroneously admitted, over defense objection, hearsay testimony of an uncharged crime under the 'present sense impression' and the 'excited utterance' exceptions to the rule against hearsay, despite the fact that the alleged victim did not testify, there was no evidence that the alleged victim was excited, and the statements were unreliable and violated the Confrontation Clause." Id. at 6-7.

(3) "The trial court erroneously admitted, over defense objection, a gun, stun gun and duct tape as evidence of an uncharged robbery." Id. at 7-8.

(4) "The court should have suppressed the weapon and other items recover [sic] from the ground by the police as the fruit of an unlawful search and seizure." Id. at 8.

(5) "The Defendant's due process rights were violated when the prosecution allow[e]d irrelevant hearsay testimony to be presented to the Grand Jury." Id.

The respondent submitted its opposition papers ("Resp. Mem.") on May 10, 2006. Neloms submitted a reply brief on October 13, 2006. See Reply Memorandum of Law Answering Respondent's Opposition to Petition for Writ of Habeas Corpus ("Reply Mem.") (Docket #14).

II. ANALYSIS

Pursuant to 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must first demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

In addition, a petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be "adjudicated on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir. 2006) ("When applying § 2254(d)'s 'unreasonable application' clause to silent state-court opinions, we review outcomes, not reasoning.") (citing Sellan, 261 F.3d at 311-12), cert. denied, 127 S. Ct. 976 (2007); Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 126 S. Ct. 215 (2005). Moreover, a state court's determination of a factual issue is "presumed to be correct" and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In Williams v. Taylor, the Supreme Court held that a state court decision is "'contrary to'" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless

arrives" at a different result.  529 U.S. 362, 405-06 (2000).  <u>Williams</u> also held that habeas relief

is available under the "'unreasonable application'" clause only "if the state court identifies the

correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies

that principle to the facts of the prisoner's case."  <u>Id.</u> at 413.  A federal court may not grant relief

"simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly."  <u>Id.</u> at 411.  Rather,

the state court's application must have been "objectively unreasonable."  <u>Id.</u> at 409.

III.  <u>DISCUSSION</u>

    A.  <u>Insufficiency of the Evidence Claim</u>

Neloms's claim that the evidence at trial was insufficient to convict him of second-degree

gun possession is cognizable under the Due Process Clause of the Fourteenth Amendment,

which prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  In light of

<u>Winship</u>, the Supreme Court has held that when reviewing a state court conviction, a federal

habeas court must consider whether there was "sufficient evidence to justify a rational trier of

the facts to find guilt beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 313

(1979).

It is settled that a habeas petitioner challenging the sufficiency of the evidence underlying

his conviction bears a "very heavy burden."  <u>Knapp v. Leonardo</u>, 46 F.3d 170, 178 (2d Cir.)

(internal quotation marks and citation omitted), <u>cert. denied</u>, 515 U.S. 1136 (1995).  To prevail,

the petitioner must show that "upon the record evidence adduced at the trial no rational trier of

fact could have found proof of guilt beyond a reasonable doubt."  <u>Jackson</u>, 443 U.S. at 324;

accord Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002).  In conducting this inquiry, all of the evidence and all reasonable inferences that may be drawn from the evidence are to be considered in the light most favorable to the prosecution.  See Jackson, 443 U.S. at 319; accord Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  Furthermore, "assessments of the weight of the evidence or the credibility of witnesses are for the jury" and thus a habeas court must "defer to the jury's assessments of both of these issues."  Id.; accord Rosa v. Herbert, 277 F. Supp. 2d 342, 347 (S.D.N.Y. 2003); Fagon v. Bara, 717 F. Supp. 976, 979-80 (E.D.N.Y. 1989) ("[T]his court is not free to make credibility judgments about the testimony presented at . . . trial or to weigh conflicting testimony.") (citing cases).

To convict Neloms of criminal possession of a weapon in the second degree, the prosecution had the burden of proving that Neloms possessed a loaded firearm "with intent to use the same unlawfully against another."  New York Penal Law § 265.03(2).  Neloms's challenge to the evidence focuses on two issues: whether he possessed a firearm and whether he had the requisite intent under the statute.  Reply Mem. at 8-12.

As to the first issue, Neloms cites to what he perceives to be inconsistencies in the arresting police officers' statements, which he asserts "[u]ndermine the reliability of [their] testimony by giving it the ring of having been embellished at trial to link petitioner to the items recovered."  Id. at 9.  This challenge, however, amounts merely to an attack on the credibility of the officers and thus fails to meet the Jackson standard.  It also ignores the fact that the civilian eyewitnesses testified that they saw Neloms in possession of a gun.  (Delarosa: Tr. 128-29, 134-35; Pena: Tr. II 5).

As to the question of intent, Neloms faults the prosecution's evidence because it relied on

"uncharged crimes": specifically, the evidence suggesting that Neloms and Guess had participated in a robbery and that they pointed guns at the civilian witnesses.  Id. at 8.  But this challenge does nothing to detract from the evidence supporting the finding that Neloms acted with the requisite intent.  First, even without any testimony on intent at all, the jury could have properly relied on the statutory presumption that possession by any person of a weapon "is presumptive evidence of intent to use the same unlawfully against another."  New York Penal Law § 265.15(4); accord Howie v. Phillips, 2004 WL 2073276, at *5 (S.D.N.Y. Sept. 17, 2004).  Second, the two civilian witnesses not only saw Neloms with a gun, but testified that Neloms brandished it in their presence, motioning with the gun for them to "get back," as Neloms and his partner fled the scene.  (Delarosa: Tr. 128-29; Pena: Tr. II 5).  Given that "the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction," United States v. Danzey, 594 F.2d 905, 916 (2d Cir.), cert. denied, 441 U.S. 951 (1979), the witnesses' evidence by itself was enough to show Neloms harbored the intent to use the gun unlawfully.  Thus, the conviction on the weapons' possession charge met the Jackson standard.

    B.  Statements of Santiago

        1.  Confrontation Clause Argument

Neloms argues that the trial court's decision to admit two out-of-court statements by Santiago – "I got robbed" and "[t]hey going down" – violated his rights under the Constitution's Confrontation Clause.  See Reply Mem. at 13, 15.

In Ohio v. Roberts, 448 U.S. 56 (1980), the Supreme Court held that the admission of hearsay statements was not violative of the Confrontation Clause so long as the statements "fall[] within a firmly rooted hearsay exception" or contain "particularized guarantees of

11

trustworthiness."  448 U.S. at 66.  In Crawford v. Washington, 541 U.S. 36 (2005), the Supreme

Court held that the Sixth Amendment's Confrontation Clause bars – without regard to reliability

– the admission of "testimonial statements of a witness who did not appear at trial unless he was

unavailable to testify and the defendant had had a prior opportunity for cross-examination."  541

U.S. at 53-54.  In Davis v. Washington, 126 S. Ct. 2266 (2006), the Supreme Court held that the

bar on testimonial hearsay is "so clearly reflected in the text" of the Confrontation Clause that it

"must . . . mark out not merely its 'core,' but its perimeter."  126 S. Ct. 2274.  Based on the

decision in Davis,  the Second Circuit has made clear that the "reliability analysis" required in

Ohio v. Roberts – that is, determining whether statements are "firmly rooted hearsay exception"

or contain "particularized guarantees of trustworthiness" – no longer governs.  See United States

v. Feliz, 467 F.3d 227, 231 (2d Cir. 2006), cert. denied, 2007 WL 74127 (U.S. Feb. 20, 2007).

In Feliz, the Second Circuit held that "the Confrontation Clause simply has no application to

nontestimonial statements."  Id. at 231 (citing Davis, 126 S. Ct. at 2274).

    Here, Santiago's statements – "I got robbed" and "[t]hey going down" – are not

testimonial as they have none of the hallmarks of testimonial statements as identified in

Crawford: for example, "ex parte in-court testimony," "extrajudicial statements . . . contained in

formalized testimonial materials, such as affidavits, depositions, prior testimony, or

confessions," or "statements that were made under circumstances which would lead an objective

witness reasonably to believe that the statement would be available for use at a later trial."  541

U.S. at 52-53 (citations and internal punctuation omitted).  Nor do they meet the Second

Circuit's test for testimonial statements: that is, statements involving "a declarant's knowing

responses to structured questioning in an investigative environment or in a courtroom setting

where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings."  United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004).   Because Santiago's statements were not testimonial, there is no Confrontation Clause claim with respect to these statements.

          2.  Due Process Argument

     Neloms's papers might also be interpreted as arguing that the admission of this evidence violated the due process clause.  See Reply Mem. at 15, 22.  Rulings by state trial courts on evidentiary matters are generally a matter of state law and pose no federal constitutional issue. Estelle, 502 U.S. at 67-69, 71-73.  Even where there has been an erroneous ruling under state law, habeas relief is not available unless the alleged error resulted in a trial that "deprive[d] the defendant of fundamental fairness," thereby violating the defendant's constitutionally guaranteed due process rights.  Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988); accord Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.) ("The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice.") (internal quotation marks and citation omitted), cert. denied, 525 U.S. 840 (1998).  In addition, to violate "fundamental conceptions of justice," the evidence "must have been sufficiently material to provide a basis for the conviction."  Dunnigan, 137 F.3d at 125 (citation and quotation marks omitted).  The petitioner bears a "'heavy burden'" in seeking to establish that improperly admitted evidence deprived him of his right to a fair trial.  Benitez v. Senkowski, 1998 WL 668079, at *5 (S.D.N.Y. Sept. 17, 1998) (quoting Roberts v. Scully, 875 F. Supp. 182, 189 (S.D.N.Y. 1995)).

     The trial court admitted Santiago's statements under New York's excited utterance and

present sense exceptions to the rule against hearsay.  Under New York law, an out-of-court statement by a non-testifying witness, though normally inadmissible as hearsay, is properly admitted as an excited utterance if it is "made . . . under the stress of excitement caused by an external event" and not "under the impetus of studied reflection."  People v. Brown, 70 N.Y.2d 513, 519-20 (1987).  "While it is critical that statements be made before a declarant had an opportunity to reflect, the relevant time period is not measured in minutes or seconds but rather is measured by facts."  People v. Cotto, 92 N.Y.2d 68, 79 (1998) (citations and quotations omitted).  What is important is "not only the nature of the startling event and the amount of time which has elapsed between the occurrence and the statement, but also the activities of the declarant in the interim."  Id. at 79  (citation and quotation omitted).  New York courts regard "[t]he 'present sense impression' exception [a]s a close relative of the analytically similar 'excited utterance' exception to the rule against the admission of hearsay.  Indeed, both are members of a larger category of exceptions that were formerly grouped together and classified . . . as res gestae."  People v. Vasquez, 88 N.Y.2d 561, 574 (1996).  However, "while the key components of 'excited utterances' are their spontaneity and the declarant's excited mental state, the key components of 'present sense impressions' are contemporaneity and corroboration."  Id.

The evidence presented to the trial court showed that Santiago "scream[ed]," from his third-story window "I got robbed" and that the robbers were on their way down.  (Delarosa: Tr. 127; Pena: Tr. II 4).  Shortly thereafter, two men appeared below, brandishing their guns.  (Delarosa: Tr. 129-30; Pena: Tr. II 5).  The victim followed and was observed "five minutes" later (see Pena: Tr. II 14) with duct tape on his hands and neck.  (Delarosa: Tr. 141-42; Pena: Tr.

II 14).

While the trial court stated that Santiago's statements alone "would probably not be normally admissible as an excited utterance;" it ruled Santiago's statements admissible as "at least an excited utterance; if not present sense impression," once they were "combined with the fact that [Santiago] peers outside with his hands bound, and it appears he was robbed." (H. 76-77). Specifically, the trial court based its ruling on the prosecutor's representation that the victim "[came] out with his arms back behind his back with the duct tape." Id. at 71. The Appellate Court found the decision to admit this evidence to be within the trial court's discretion. Neloms, 8 A.D.3d at 137.

The record is unclear as to how much time elapsed between the alleged robbery and Santiago's statements or what Santiago did in the interim. It is clear, however, that by the time the robbers had descended three flights to exit the building, Santiago had already yelled that he had been robbed and was in a state of great excitement. In other words, Santiago's statements may fairly be characterized as a "spontaneous description of events as they were unfolding." Neloms, 8 A.D. 3d at 137.

Likewise, Santiago's behavior a mere five minutes after Neloms exited the building, as described by the eyewitnesses (see Pena: Tr. II 14) suggests that Santiago was still under the stress of the alleged robbery at that time of his statements. Both eyewitnesses reported that he still had duct tape on his hands and neck. (Delarosa: Tr. 142; Pena: Tr. II 14). As Delarosa described it, Santiago looked "scared," see Delarosa Tr. 142; according to Pena, Santiago quickly got into a car and left the scene. (Pena: Tr. II 14). Together these facts support the Appellate Division's "conclusion that the robbery had just occurred, and that the declarant was

still under the influence of the stress of that incident," <u>Neloms</u>, 8 A.D.3d at 137, when he made

the statements.  Additionally, the testimony demonstrated that "defendant and another man

hurriedly left the victim's apartment building, with guns drawn, just after the victim announced

that there had been a robbery and that the robbers were on their way out of the building."  <u>Id.</u>

It is not necessary, however, to reach the question of whether the admission of this

evidence was correct under New York law.  This is because the jury's consideration of this

evidence was not "so extremely unfair that its admission violates fundamental conceptions of

justice."  <u>Dunnigan</u>, 137 F.3d at 125.  For the reasons just discussed, the statements had obvious

relevance and indicia of reliability.  Regardless of whether they met New York's requirements

for admission of an excited utterance or a present sense impression, there was nothing

"extremely unfair" about the jury's hearing this aspect of the sequence of events.  Certainly, the

Appellate Division's decision on this point  was not "contrary to" or "an unreasonable

application of" Supreme Court law.

C.  <u>Admission of Physical Evidence</u>

Neloms next argues that the trial court erroneously admitted a gun, stun gun, and duct

tape as evidence because they were all suggestive of an uncharged crime: specifically, robbery.[5]

Petition at 7-8.  Under New York law, evidence of uncharged crimes may not be used for the

purpose of showing a defendant's propensity to commit the charged crime.  <u>See</u> <u>People v.</u>

<u>Molineux</u>, 168 N.Y. 264, 291 (1901).   However, "when the evidence of the other crimes is

---

[5] In his Reply Memorandum, Neloms suggests that the eyewitness' statements should be treated as evidence of an uncharged crime as well.  <u>See</u> Reply Mem. at 23.  In this habeas petition, however, we can only consider the arguments that Neloms advanced on appeal and the claim that the statements were evidence of an uncharged crime was not one of them.  Rather, Neloms's appellate briefs addressed the trial court's ruling as to uncharged crimes only in the context of the physical evidence.  <u>See</u> Ex. A to Resp. Mem. at 17-32.

relevant to an issue other than the defendant's criminal tendency, it may be admitted on the basis

of an exception to the general rule."  People v. Beam, 57 N.Y.2d 241, 250 (1982); accord People

v. Collins, 29 A.D.3d 434, 434 (1st Dep't 2006) ("The court's Molineux ruling . . . was an

appropriate exercise of discretion as the evidence of uncharged crimes was probative of

defendant's motive and intent . . . .") (citation omitted).

Here, the physical evidence was offered to show that Neloms acted "with intent to use the

[weapon] unlawfully against another."  New York Penal Law § 265.03(2).  The evidence that

Neloms had just engaged in a robbery was plainly relevant to the question of his intent when he

possessed the gun.  Because this evidence was "probative of [an] essential element" in the case,

its admission did not violate Neloms's right to due process.  Estelle, 502 U.S. at 69 (because the

"evidence was relevant to an issue in the case," the Court "need not explore further the apparent

assumption of the Court of Appeals that it is a violation of . . . due process . . . for evidence that

is not relevant to be received in a criminal trial.").

This conclusion is buttressed by the fact that the trial court issued a limiting instruction:

> I have allowed testimony in regard to the .25 caliber gun and stun gun . . . .  I
> have also allowed testimony that Mr. Neloms allegedly had in a bag recovered
> from his person a roll of duct tape and a sum of money. . . . The reason for that
> was solely for you to evaluate whether Mr. Neloms, who's accused of having
> possessed a loaded firearm, possessed that firearm with the intent to use it
> unlawfully against another person . . . [and] only for such limited purpose.  In
> other words, it is not to be used to determine that Mr. Neloms had a propensity or
> a disposition to commit the crimes charged in this indictment.

(Tr. 106-107).  During its final instructions, the trial court reminded the jury of the limited

purpose for which this evidence could be used.  (Tr. 375-76).

In any event, there is no basis on which to conclude that the physical evidence alone was

"sufficiently material to provide the basis for conviction or to remove a reasonable doubt that

17

would have existed on the record without it." Dunnigan, 137 F.3d at 125; see, e.g., Dalcin v. New York, 438 F. Supp. 2d 176, 181-82 (W.D.N.Y. 2006) (evidence of defendant's prior crimes against victim and her family was not so unfairly prejudicial as to amount to a denial of due process in prosecution for burglary and larceny where evidence against defendant was "overwhelming").  Neloms's intent to use the gun unlawfully against another was readily demonstrated by the statutory presumption previously discussed and by the eyewitnesses' testimony that Neloms brandished a gun in their presence and used it to keep them "back" as he and his partner fled the scene.  (Delarosa: Tr. 129-30; Pena: Tr. II 5).

In sum, the decision of the Appellate Division was not "contrary to" or "an unreasonable application of" any federal law and habeas relief must be denied as to Neloms's claims relating to the admission of the physical evidence.

D.  Fourth Amendment Claim

Neloms disputes whether the guns, duct tape and other physical evidence were properly seized under the Fourth Amendment.  Petition at 8; Reply Mem. at 29-37.  The claim is barred by Stone v. Powell, 428 U.S. 465 (1976).  Under Stone, a habeas petitioner is not entitled to relief for a Fourth Amendment claim if the state courts provided him with "an opportunity for full and fair litigation" of the claim.  Id. at 482.  Rather, a habeas petitioner's Fourth Amendment claims may be reviewed only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)) (en banc), cert. denied,

434 U.S. 1038 (1978); accord Brown v. Brown, 2006 WL 3405481, at *12 (S.D.N.Y. Nov. 27, 2006).

Neither prong of this test is met here. First, New York provides a corrective procedure in the form of a suppression hearing. See N.Y. Criminal Procedure Law § 710.10 et seq.; Capellan, 975 F.2d at 70 n.1 ("'[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'") (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)). Second, Neloms was never precluded from using this mechanism. While he ultimately lost on the merits, he had every opportunity to litigate his suppression motion.

Neloms's argument with respect to this claim is hard to follow, but ultimately appears to rest on a disagreement with the suppression court's decision to admit the evidence. See Reply Mem. at 37. The Second Circuit has squarely held, however, that "once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72. Thus, habeas relief for this claim is not available.

E. Grand Jury

Neloms argues that the prosecution improperly introduced hearsay evidence during the grand jury proceedings. Petition at 8; Reply Mem. at 37-41. However, "claims concerning a state grand jury proceeding are . . . foreclosed in a collateral attack brought in a federal court."

Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (claims of deficiencies in a federal grand jury proceeding are not cognizable on direct appeal where rendered harmless by a petit jury verdict)); accord McLean v. Conway, 2006 WL 2405067, at *21 (S.D.N.Y. Aug. 21, 2006); Alexander v. Phillips, 2006 U.S. Dist. LEXIS 8926, *38-39 (S.D.N.Y. Feb. 21, 2006); Barnes v. Giambruno, 2002 WL 850020, at *7 (S.D.N.Y. May 2, 2002).  This is because "the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding . . . was harmless beyond a reasonable doubt."  Mechanik, 475 U.S. at 70.   Accordingly, Neloms's claim on this point is not cognizable on habeas review.

Conclusion

Neloms's petition is denied.  Because Neloms has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).  In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the judgment would not be taken in good faith.  The Clerk is requested to enter judgment.

Dated:  March 16, 2007
          New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

John Neloms
 01-A-0079
Fishkill Correctional Facility
P.O. Box 1245,
Beacon, New York 12508

Luke Martland
Lisa Fleischmann
120 Broadway
New York, New York 10271

Dated: March 16, 2007
    New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

John Neloms
 01-A-0079
Fishkill Correctional Facility
P.O. Box 1245,
Beacon, New York 12508

Luke Martland
Lisa Fleischmann
120 Broadway
New York, New York 10271